IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

| | |
|---|---|
| PAULETTE WEDDING, *individually and on behalf of those similarly-situated* )<br>)<br>*Plaintiff,* )<br>)<br>v. )<br>)<br>BRIGHTON CORNERSTONE GROUP, LLC )<br>)<br>*Defendant.* )<br>) | Case No. 4:23-cv-28-DJH-HBB<br><br>**JURY TRIAL DEMANDED** |

## AMENDED JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CERTIFICATION OF A CLASS UNDER RULE 23(b)(3)

Plaintiff Paulette Wedding, individually and on behalf of similarly situated persons ("Plaintiff"), by and through her attorneys, and with the consent of Defendant Brighton Cornerstone Group, L.L.C. ("Defendant"), hereby requests preliminary approval of the Parties' Stipulation of Settlement ("Settlement Agreement"). Specifically, Plaintiff moves the Court for an Order:

(a) preliminarily approving the Settlement Agreement;

(b) certifying a Class under Fed. R. Civ. P. 23(b)(3) for Plaintiff's claims under the Kentucky Wages and Hours Act ("KWHA");

(c) appointing the undersigned Class Counsel with authority to enter into and effectuate this Settlement Agreement on behalf of the Class;

(d) approving the Notice of Settlement to be sent to all Class Members;

(e) setting a deadline for the filing of Plaintiffs' memoranda in support of the motion to approve this Settlement Agreement and Petition to Approve Fee Award;

(f) setting forth the requirements for and deadline to submit objections by an Class Member;

(g) setting forth the process for Class Members to exclude themselves from the Settlement and a deadline for doing so;

(h) finding that Plaintiff has agreed to the terms of the Settlement Agreement;

(i) finding that the Notice of Settlement to be given in accordance with the Preliminary Approval Order sought constitutes the best notice practicable and constitutes valid, due and sufficient notice to all Class Members under Federal Rule of Civil Procedure 23(c)(2), and the requirements of due process;

(j) providing that the Class Members, except those who timely submit a request for exclusion, will be included in and bound by any and all judgments or orders entered or approved by the Court in connection with the settlement upon the entry of judgment;

(k) scheduling a fairness hearing and matters to be heard at the same; and

(l) providing that Defendant shall file a certificate with the Court of its compliance with 28 U.S.C. § 1715's notice requirements.

For grounds, Plaintiff would show that the Parties have reached a settlement, subject to the approval of the Court, between Defendant, on the one hand, and Plaintiff and a proposed Rule 23 class, on the other hand. A copy of the agreement is attached hereto as Exhibit 1.[1] A copy of the Parties' Settlement Agreement and the proposed Notice are being filed contemporaneously with this Motion. The settlement meets the standards governing the granting of preliminary approval of a class action settlement and, for the more detailed reasons that follow, should be granted.

---

[1] The Agreement contemplates a notice to the proposed class and a proposed opt-out statement, which are attached hereto as Exhibits 2 and 3. A Declaration of Mark N. Foster in support of this motion is attached hereto as Exhibit 4.

I. **INTRODUCTION**

On February 24, 2023, Plaintiff filed an action in this Court, on behalf of herself and similarly situated individuals, asserting claims under the FLSA and Kentucky wage and hour law. In her Complaint, Plaintiff alleges, among other things, that Defendant failed to properly include bonuses and other non-excludable remuneration into the "regular rate of pay" of non-exempt employees; resulting in employees receiving less than the overtime premium required by both federal and state law. [Dkt. # 1]. The Complaint further alleges that Defendant failed to properly calculate the "regular rate" of non-exempt employees when such employees worked at more than one rate during a workweek. *Id*. Finally, the Complaint alleges that the "on call" pay of Plaintiff and other non-exempt employees were also improperly excluded from non-exempt employees' regular rate of pay.

Subject to Court approval, the Parties have agreed to settle these claims on a class action basis under Kentucky state wage and hour law pursuant to Federal Rule of Civil Procedure 23, for the amount set forth in the Schedule A set forth in the Settlement Agreement, inclusive of attorneys' fees, litigation costs, and Plaintiff's service award. As discussed more fully below, the settlement is the result of extensive negotiations between the Parties, is fair, and should be approved.

II. **BACKGROUND**

Plaintiff worked as a nurse for Defendant, which operates a nursing home. Defendant paid Plaintiff an hourly rate for her work, but Plaintiff was periodically paid a different rate of pay based on the shift she worked or the area of the nursing home where she worked. Plaintiff was also periodically paid bonuses, including a sign-on bonus and a bonus for working with certain patients or working certain shifts. Finally, Plaintiff received "on call" pay for being available to come in

when staffing needs required. The Complaint alleges that Defendant violated both the Kentucky Wages and Hours Act and the Fair Labor Standards Act in three ways: (1) Defendant failed to properly compute Plaintiff's "regular rate" of pay for purposes of calculating her overtime premium when Plaintiff worked at different hourly base rates; (2) by failing to include bonuses when calculating the "regular rate" used in calculating Plaintiff's overtime premium; and (3) improperly excluding the "on-call" pay from Plaintiff's "regular rate." Plaintiff asserted these claims on behalf of herself and similarly situated non-exempt employees of Defendant.

Following Plaintiff's filing of this action, the Parties thoroughly investigated their claims and defenses and exchanged the relevant pay data. Defendant also engaged a former United States Department of Labor Wage and Hour Investigator to evaluate these claims and estimate potential damages for non-exempt employees; and shared the computations and assumptions with Plaintiff's counsel. Counsel for the Parties also analyzed the likelihood of successfully trying the case on a class-wide basis. Numerous teleconferences were held and emails exchanged between representatives of the Parties in order to attempt to resolve the claims.

Defendants denied and continue to deny any liability or wrongdoing of any kind associated with the claims alleged by Plaintiff, and further deny that, for any purpose other than settling this matter, this action is appropriate for class or collective action treatment. Plaintiff, on the other hand, asserts that Defendants failed to comply with federal overtime wage requirements embodied in the FLSA and applicable state wage laws. Class Counsel understands Defendant's position and defenses, but believes Plaintiff, individually and on behalf of the Class, could ultimately succeed at trial on the basis of common proof. Both Parties recognize the uncertainty of the outcome, and appreciate the expense and time associated with further litigation. Accordingly, in the interest of resolution, representatives of the Parties participated in lengthy settlement negotiations and

ultimately reached the Settlement after taking into account the disputed factual and legal issues, the risks attendant to further prosecution, Defendant's defenses, and the benefits to be received by Class Members. Counsel concluded that settlement on the terms set forth herein is in the best interest of Plaintiff and the Class and is fair and reasonable.

### III. KEY SETTLEMENT TERMS

The Settlement Agreement defines the Settlement Class as: Plaintiff, Paulette Wedding, and all similarly-situated non-exempt employees employed by BCG from February through November 30, 2023, and who are listed on Schedule A to the Agreement. Schedule A to the Agreement lists 129 specific employees, who comprise the class, and lists, for each employee, a specific dollar amount for "Unpaid Wages" and a separate, additional specific amount for "Liquidated."

The Parties first identified those individuals who worked as non-exempt employees during the relevant time period and calculated a specific amount of unpaid wages based upon a review of the pay records for such individuals during the relevant time period. As a result of that analysis, it was determined that a number of individuals were owed some amount, but less than twenty dollars in back wages, and the Parties determined that such individuals would be paid a flat amount of twenty dollars ($20.00) as unpaid wages. Further, the Parties agreed that Class Members would be paid, on account of liquidated damages under the KWHA, seventy-five percent (75%) of the unpaid wages they were calculated to be owed. Thus, the "Liquidated" amount for each employee is always 75% of the "Unpaid Wages" amount, and the minimum amount any class member will receive is $35.00 -- $20.00 for "Unpaid Wages" and $15.00 for "Liquidated."

The Settlement provides a specific amount of unpaid wages based upon evaluation of the pay records of the Class Members, and the amount of unpaid wages and liquidated damages are

attached to the Settlement Agreement as Schedule A. The Settlement also provides for attorneys' fees, litigation expenses, and a service award to Plaintiff.

The release binding Class Members who do not opt out is limited to the wage and hour claims set forth in the Settlement. Subject to this Court's approval, Plaintiff's Counsel will receive fees and litigation costs incurred prior to the date of the Settlement; and the parties have stipulated to an estimated additional amount for the work the Parties anticipate Plaintiffs' counsel will conduct prior to the final resolution of this matter. Defendants do not oppose and will not object to a request for attorneys' fees and costs within this estimated amount. The parties request that Plaintiff's counsel be permitted to file a supplemental declaration setting forth the amount of time expended prior to a fairness hearing, as this will allow the declaration to include the additional time incurred in connection with providing notice to the class.

Because the Parties have agreed to the amounts due to Class Members, and because of the relatively small number of individuals involved, the Parties have agreed not to engage a settlement administrator and to undertake providing Notice of the Settlement and the documents discussed in the Settlement themselves. The Class Notice will be mailed to all putative class members within 14 days after the Court's preliminary approval of this settlement.

The Parties' proposed Notice of Settlement should be approved as it explains in clear terms (1) the nature of the settlement, (2) the amount each class member will be paid under the settlement, and (3) each class member's right to object to the settlement or exclude themselves from the settlement. Counsel for Plaintiff will send the notice of preliminary approval and settlement to each class member and each of them will have 45 days after mailing of the notice to choose to opt-out or file objections. Class members will also have the opportunity to appear at the final approval hearing to be set by the Court.

If the settlement is granted final approval, payments will be made promptly to class members. Settlement checks that cannot be delivered or are not cashed after 180 days of mailing will be retained by Defendant, who is obligated to remit such amounts to a Class Member who later inquires about such Settlement Payment.

### IV. ARGUMENT

#### A. The Court Should Preliminarily Approve the Settlement

Federal Rule of Civil Procedure 23(e) provides a class action can be settled only with court approval. In the Sixth Circuit, there is a three-step process for approving class action settlements: (1) the court preliminarily approves the proposed settlement; (2) the class members receive notice of the proposed settlement; and (3) after a hearing, the court finally approves the settlement. *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 903 (S.D. Ohio 2001). Preliminary approval of a class action settlement is thus a provisional step.

At the preliminary approval stage, the Court's review is not exacting. The Court's role is simply to evaluate whether the proposed settlement appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval. *In re Skechers Toning Shoe Prods. Liab. Litig.*, 2012 WL 3312668, at *8 (W.D. Ky. Aug. 13, 2012); *Hyland v. HomeServices of Am., Inc.*, No. 05-cv-612, 2012 WL 122608, at *2 (W.D. Ky. Jan. 17, 2012) (*citing Tenn. Assoc. of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001)).

The standards for preliminary approval are less stringent than at the final approval stage. *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011)). Moreover, in evaluating a proposed settlement, "[the Court's] role at this stage of the proceeding is not to

evaluate the merits of the litigation, since this would contravene the parties' decision to 'waive their right to litigate the issues involved in the case and thus save themselves the time, and the inevitable risk of litigation." *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971).

The question for the Court to resolve is "simply whether the settlement is fair enough that it is worthwhile to expend the effort and costs associated with sending potential class members notice and processing opts-outs and objections." *Hillson v. Kelly Servs.*, Case No. 2:15-cv-10803, 2017 WL 279814, at *6 (E.D. Mich. Jan. 23, 2017). Accordingly, at the preliminary approval stage, "the bar to meet the 'fair, reasonable, and adequate' standard is lowered[.]" *In re Regions Morgan Keegan Secs.*, No. 08- cv-2260, 2015 WL 11145134, at *3 (W.D. Tenn. Nov. 30, 2015); *Johnson v. W2007 Grace Acquisition I, Inc.*, No. 13-2777, 2015 WL 12001268, at *4 (W.D. Tenn. Apr. 30, 2015). Applying these standards, preliminary approval of the Settlement Agreement is warranted.

### 1. The Proposed Settlement Was Fairly and Honestly Negotiated

The primary procedural factor that courts consider in determining whether to preliminarily approve a proposed class action settlement is whether the agreement arose out of arms-length, non-collusive negotiations. *Hillson*, 2017 WL 279814, at *6 (*citing* NEWBERG ON CLASS ACTIONS, § 13:14 (5th ed.)). Here, the Parties are represented by counsel that are highly experienced in the specific type of wage and hour claims alleged in the action. *See* Declaration of Mark Foster attached as Exhibit 4. Specifically, the Parties independently investigated the merits of the claims in Plaintiff's Complaint and Defendant's defenses and utilized payroll information and the respective assumptions of the parties with respect to the violations alleged in the Complaint. In addition, the Parties utilized the estimates of a prior Investigator of the United States Department of Labor, Wage and Hour Division, in determining the wages due to employees. The investigator's

work generated damage estimates based on verifiable formulas, which were in turned based on verifiable raw payroll data, and Plaintiff's counsel verified both the formulas and data.

Finally, the parties have engaged in significant negotiations over the length of approximately eight months to reach a final settlement. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) (parties represented by counsel engaged in "over four months of arms-length settlement discussions during which parties exchanged data" allowing both sides to evaluate strengths and weaknesses satisfied fair and honest negotiation factor). "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011)

    **2.    Serious Questions of Law And Fact Exist, Placing the Ultimate Outcome of This Action in Doubt**

Plaintiff believes that the claims are strong but recognizes that success is not guaranteed. With respect to the merits of Plaintiff's claims, Plaintiff believes that she will prevail in demonstrating that the "regular rate" of pay used to calculate Class Members' overtime premium was incorrect because of Defendant's alleged exclusion of particular bonuses and "on call" pay; and Defendant's failure to use a weighted average when Class Members worked at different rates of pay within the same workweek. Defendant, however, contend that they properly excluded certain bonuses from the "regular rate" of pay, and that Defendant properly utilized the "rate causing overtime" method of determining the "regular rate of pay" when calculating the overtime premium of Class Members who worked at different rates of pay in the same workweek.

Nonetheless, both Parties recognize that they may not ultimately prevail, and that the proposed settlement alleviates the uncertainty for both sides. Because the settlement results in the award to the class of the entire amount of unpaid wage damages sought, plus an additional award of 75% of that amount in liquidated damages, a substantial danger of proceeding further, from plaintiff's perspective, is that Defendant could, even if it is found ultimately liable, be found liable for less than the amount provided for in the settlement if Defendant succeeded even in only partially establishing that its violations were undertaken in good faith.

Even aside from the risks associated with determining liability, significant risks exist as to the amount of possible damages. Because these issues raise several important questions of law and fact regarding liability and damages that remain unresolved, the second factor weighs in favor of approval of the Settlement. *See Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *16 (N.D. Ohio Sept. 1, 2011)(citing to 4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 11.50 (4th ed.2002) that "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

### 3. The Value of Immediate Recovery Outweighs the Possibility of Any Future Relief

The issues here are complex and will be vigorously contested, resulting in significant time and expense if the litigation continues. The Parties anticipate significant motion practice on issues relating to the propriety of including or excluding certain types of remuneration as bonuses, and whether the "rate causing overtime" method was appropriately employed during the five year time period at issue. Barring a settlement, the Parties would need to prepare for and conduct a trial with numerous witnesses, potential experts and records. Thereafter, any final judgment could be appealed, thereby extending the duration of the litigation. Given these risks, further litigation could

result in little to no recovery for Class Members or a significant judgment against Defendants, which could create significant financial difficulties and, potentially, leave nothing for the Class Members to recover. For these reasons, the value of an immediate and certain settlement far outweighs the uncertainty of any future relief, and the Settlement Agreement should be preliminarily approved. *Id.*

### 4. Counsel Believe the Settlement Is Fair and Reasonable

Counsel for both sides fully support the Settlement Agreement, and "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695 (finding that this factor favored preliminary approval where "the parties' counsel - among whom are attorneys with substantial experience in complex class action litigation and disability class actions - unanimously support this settlement") (citation omitted); see also, id at *18 (same). The task of the Court is to ensure that the settlement is fair to the proposed plaintiff class, and Plaintiff's counsel submits that it is an excellent result for the class, given the value and mathematical nature of the claims. When evaluated in light of the factors identified by this Circuit, the proposed settlement is fair, reasonable, and adequate and should be approved.

### B. The Settlement Class Meets the Requirements of Rule 23(a) For Settlement Purposes.[2]

#### 1. Numerosity

The numerosity requirement of Rule 23(a)(1) is established if the class is so numerous that joinder of all members is impracticable. In the instant case, the Settlement Class consists of one hundred thirty-nine (139) individuals, which satisfies the numerosity requirement of Rule 23(a)(1).

---

[2] For purposes of settlement only, Defendant has agreed not to contest the statements made in this motion regarding class action certification. However, Defendant does not waive, and expressly reserves, any defenses or denials that class certification is proper in this case should the Court not approve the settlement or the settlement not be perfected.

*See, e.g. Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974) (as few as 35 people satisfied standard); *Thomas v. Louisiana Pacific Corp.*, 246 F.R.D. 505, 509 (D.S.C. 2007) (approving class action with 130 potential class members).

### 2. Commonality & Typicality

Commonality and typicality "tend to merge." *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012). "A finding of commonality requires only a single question of law or fact common to the entire class." *DG v. Devaughn*, 594 F.3d 1188, 1194-1195 (10th Cir. 2010). "[Rule 23] does not require that all, or even most issues be common, nor that common issues predominate, but only that common issues exist." *Beaulieu v. EQ indus. Services, Inc.*, 2009 WL 2208131, *11 (E.D.N.C. July 22, 2009) (internal citations and quotations omitted). Here, Plaintiff contends the primary questions of law and fact central to the claims against Defendants include:

a. Whether Defendant engaged in a pattern or practice of failing to include all compensation earned for work performed in calculating the overtime rate of pay, in violation of the KWHA;

b. Whether Plaintiff and members of the Class are entitled to lost wages, liquidated damages and other relief.

Thus, for settlement purposes, the proposed Class Members share sufficient commonality to satisfy Federal Rule of Civil Procedure 23(a)(2).

To satisfy the typicality requirement of Federal Rule of Civil Procedure 23(a)(3), Plaintiff must show that her claims "are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiff such that the interests of the class will be fairly and adequately protected in their absence. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Plaintiff alleges that Defendant failed to properly include all required remuneration when calculating the "regular rate" of Class Members and consequently failed to properly pay the required overtime premium to Class Members. As a result, Plaintiff claims that she and the other putative Class Members are owed additional compensation. Plaintiff contends that the legal standards and requirements for proving the subject wage and hour claims are the same for Plaintiff's individual claims and those of all of the putative Class Members. Thus, for settlement purposes, Plaintiff's claims are sufficiently typical of the putative class to satisfy Federal Rule of Civil Procedure 23(a)(3).[3]

**4. Adequacy**

The last requirement of Rule 23(a) is that the representative party will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a)(4). The Sixth Circuit looks to two criteria to determine the adequacy of representation: "the representative must have common interests with unnamed members of the class; and it must appear that the representatives will vigorously prosecute the interest of the class through qualified counsel." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012). Plaintiff asserts that neither she nor her counsel have any interests antagonistic to those of the putative Class Members. Plaintiff has communicated regularly with Class Counsel, and Plaintiff, through counsel, has prosecuted this action vigorously on behalf of herself and the putative class. Plaintiff's counsel has served as lead counsel in class action wage and hour litigation, and in representing collectives under the FLSA. *See* Ex. A. Thus, for settlement

---

[3] Because Plaintiff received somewhat more bonus compensation than other employees, Plaintiff's claims are somewhat monetarily higher than other employees. However, Plaintiff receives the same percentage – 100% – of recovery on her unpaid wage claim and the same percentage – 75% of recovery on her liquidated damages claims as other class members receive on their respective claims. If anything, absent class members receive a better recovery as Plaintiff negotiated minimum recoveries such that employees other than Plaintiff receive at least $20.00 in unpaid wages, and at least $15.00 in liquidated damages, even if their actual damages were less.

purposes, Plaintiff has established that Plaintiff and Class Counsel will fairly and adequately protect the interests of the putative class to satisfy Federal Rule of Civil Procedure 23(a)(4).

    **C.    The Settlement Class Meets the Requirements of Rule 23(b)(3) For Settlement Purposes.**

Plaintiff asserts that certification is proper under Rule 23(b)(3) for settlement purposes. Rule 23(b)(3) permits class certification when (1) common questions of law and fact predominate over any individual claims and (2) a class action is the superior method to fairly and efficiently adjudicate the matter. Under the Rule 23(b)(3) predominance analysis, the Court must determine whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

    **1.    Predominance**

The predominance requirement is satisfied if a plaintiff establishes that a common nucleus of facts and potential legal remedies dominates the litigation. *Id*. As explained above, Plaintiff asserts that the common nucleus of facts in the present case derives from the alleged practices that excluded certain remuneration from the "regular rate" of pay used to calculate the overtime premiums of Class Members as required by the KWHA. Plaintiff alleges that the Settlement Class Members would be entitled to the same legal remedies. Accordingly, preliminary class certification for settlement purposes to effectuate the Settlement Agreement is proper. Additionally, Plaintiff contends that class certification in this case serves the judicial economy function of Rule 23 class actions.

    **2.    Superiority**

Plaintiff alleges that a proposed class action settlement is the superior method of resolving the dispute in comparison to available alternatives. A class action is the superior method for managing litigation if no realistic alternative exists. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d

1227, 1234-1235 (9th Cir. 1996). Plaintiff asserts that the alternative method of resolution could be more than one hundred trials of individual claims, but individual cases would be uneconomical for potential plaintiffs because the cost of litigation dwarfs their potential recovery, and for Defendants and the Court because it would cause an extensive duplication of efforts and resources. Because it is likely that each individual Settlement Class Member could only pursue relatively small claims, such individuals have no particular interest in individually controlling the prosecution of separate actions. Additionally, in the instant action, all Settlement Class Members have the option to opt-out of the proposed settlement, thus allowing individuals the opportunity to control the resolution of their individual claim if they wish to do so. Plaintiff believes that concentrating the litigation of the claims in this and one particular forum would be the most efficient manner or adjudicating all of the claims of the Settlement Class. For purposes of preliminary approval of the Settlement Agreement, there is no reason why concentrating the litigation in this Court would be undesirable. Lastly, under Rule 23(b)(3)(D), the Court may consider likely difficulties in managing a class action. In the context of a settlement, however, considerations regarding management of the class action are irrelevant, because the proposal to the court is to avoid trial through a settlement agreement. *See Amchemr*, 521 U.S. at 620 (1997). In light of these considerations, preliminary certification of the Settlement Class for settlement purposes is proper under the requirements of Rule 23(b)(3).

### D. The Court Should Approve the Proposed Notice And Exclusion Form

Pursuant to Rule 23(e), the Court must direct reasonable notice to all class members. *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008) (citing FED. R. CIV. P. 23(e)(1)). Courts have broad discretion to approve the specific form and content of notice so long as the notice meets the requirements of constitutional due process. *Id.* These requirements are met if the notice is

reasonably calculated to apprise interested parties of the pendency of the proposed settlement and afford them an opportunity to present objections. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). A Rule 23(e) settlement notice must inform class members (1) of the nature of the pending litigation, (2) of the settlement's general terms, (3) that complete information is available from the court files, and (4) that any class member may appear and be heard at the final approval hearing. 4 NEWBERG ON CLASS ACTIONS § 11:53 (4th ed. 2002).

The proposed Notice satisfies all these elements. First, it explains the nature of the action. Second, the Notice apprises Settlement Class Members of the pendency of the settlement and informs them of material settlement terms. The Notice explains that Class Members who "do nothing" will remain in the Settlement Class, receive a settlement payment, and be bound by the settlement and all orders and judgments. The Notice describes how to object to the settlement, informs Class Members of the precise recovery they will receive under the settlement. *Pelzer v. Vassalle*, 655 F. App'x at 368 (6th Cir. 2016) (*quoting Int'l Union*, 497 F.3d at 630) (notice should "fairly apprise the prospective members of the class of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests.").

Class Members are also provided full notice of their right to file objections, attend the fairness hearing, or hire their own attorney at their expense. *Id.* at 368 (*quoting Int'l Union*, 497 F.3d at 631) (notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

The Notice provides Class Members a reasonable amount of time, 45 days from the date the notice is mailed, to object to the Settlement or mail an opt-out request. Courts have routinely

found this period to be reasonable. *See e.g. Bryant v. Act Fast Delivery of Colorado, Inc.*, No. 14-CV-00870-MSK-NYW, 2015 WL 3929663, at *5 (D. Colo. June 25, 2015).

The Parties will file a Joint Motion for Final Approval of the Settlement following the end of the objections period, which will address any objection filed or, if none has been filed, report that. The Parties also request the Court to set a final fairness hearing so that the Notice can inform Class Members of the date and location of that hearing. To accommodate the notice period, and in compliance with the Class Action Fairness Act, the Parties request a date no less than 90 days and no more than 105 days after the Court's order preliminarily approving the settlement.

V.     CONCLUSION

WHEREFORE, the proposed Settlement is fair, adequate, and reasonable. It will result in considerable payments to class members; it is non-collusive; and it was achieved as the result of informed, extensive, and arm's length negotiations conducted by counsel for the respective Parties who are experienced in wage and hour class action litigation. For the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion and issue an Order that:

(a) Certifies a Class under Fed. R. Civ. P. 23(b)(3) for the KWHA claims for the purpose of effectuating this Settlement Agreement to include the Plaintiff and all Class Members;

(b) Preliminarily approves this Settlement Agreement as being fair, reasonable, adequate and in the best interests of the Class and a fair and reasonable resolution of a bona fide dispute under the KWHA, subject to any objections that may be raised at the final fairness hearing and final approval of class and collective settlement by this Court;

(c) Appoints Plaintiff Paulette Wedding as Class representative;

(d) Appoints Mark Foster as Class Counsel with authority to enter into and effectuate this Settlement Agreement on behalf of the Class;

(e) Approves as to form and content the Parties' proposed Notice as reasonable notice practicable under the circumstances and in full compliance with applicable law, to be mailed by Class Counsel within 14 days of the Court's entry of the requested Order;

(f) Finds that the Notice of Settlement to be given in accordance with the Preliminary Approval Order constitutes the best notice practicable under the circumstances and constitutes valid, due and sufficient notice to all Class Members, and fully satisfies the requirements of Federal Rule of Civil Procedure 23(c)(2) and the requirements of due process;

(g) Orders that each Class Member be given a full opportunity to object to or opt-out of the Settlement Agreement and to participate at the final approval hearing, and orders that objections by any Class Member shall be heard and any papers submitted in support of said objections shall be considered by the Court at the Fairness Hearing only if said objections are in writing, mailed to Class Counsel, and postmarked no later than forty-five (45) days after the mailing of the Notice of Settlement;

(h) Orders that Class Members who wish to exclude themselves from the Class and from participation in the settlement must mail a signed, completed request to be excluded to Class Counsel that is postmarked no later than forty-five (45) days after the mailing of the Notice of Settlement;

(i) Orders that the Class Members, except those who timely submit a request for exclusion, will be included in and bound by any and all judgments or orders entered or approved by the Court in connection with the settlement, whether favorable or unfavorable to the

    Class and, upon the entry of judgment, will be permanently barred and enjoined from commencing, prosecuting any claim or participating in any recovery in any forum in which any of the Released Claims are asserted or pursued;

(j) Orders that Class Counsel shall file all objections and other papers in support of such objections with the Court no later than 65 days after mailing of the Notice of Settlement;

(k) Sets a deadline for the filing of Plaintiff's memoranda in support of the motion to approve this Settlement Agreement and Petition to Approve Fee Award of seven (7) days prior to the Fairness Hearing;

(l) Orders that Defendant shall file a certificate with the Court of its compliance with 28 U.S.C. § 1715's notice requirements within 10 days of the Preliminary Approval Order; and,

(m) The Court will schedule a Fairness Hearing to be held by the Court no less than ninety (90) days and no more than one hundred five (105) days after the entry of the Preliminary Approval Order to consider and determine whether the proposed settlement, as set forth in the Settlement Agreement, should be approved as fair, reasonable and adequate to the Class, and whether Judgment should be entered.

Respectfully submitted,

*/s/Mark N. Foster, with permission*
Mark N. Foster
Law Office of Mark N. Foster, PLLC
P.O. Box 869
Madisonville, KY 42431
(270) 213-1303
MFoster@MarkNFoster.com
*Counsel for Plaintiff*

*/s/ Rex P. Fennessey*
Rex P. Fennessey
McMahon Berger, P.C.
2730 North Ballas Road, Suite 200
St. Louis, Missouri 63131
(314) 567-7350 (telephone)
(314) 567-5968 (facsimile)
fennessey@mcmahonberger.com
*Counsel for Defendant*